IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LYNVAL MACLASA PEARSON, | § | |
| TDCJ #1847945, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-18-4575 |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice - Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Lynval Maclasa Pearson has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1), seeking relief under 28 U.S.C. § 2254 from a murder conviction entered against him in Harris County, Texas. Respondent Lorie Davis has filed Respondent Davis's Answer with Brief in Support ("Respondent's Answer") (Docket Entry No. 10), and Pearson has filed Petitioner's Traverse to Respondent Davis's Answer in reply (Docket Entry No. 13). After considering the pleadings, the state court record, and the applicable law, the court will dismiss this action for the reasons explained below.

## I. Background

A grand jury in Harris County, Texas, returned an indictment against Pearson in Case No. 9403483, charging him with causing the

death of Salvador Ortiz Vargas by shooting him with a deadly weapon, a firearm.[1] A jury in the 263rd District Court for Harris County found Pearson guilty as charged in the indictment.[2] On March 27, 2013, the same jury sentenced him to thirty years' imprisonment.[3]

On direct appeal Pearson argued that the trial court erred by failing to automatically instruct the jury that one of the State's witnesses (Fortino Delangel) was an accomplice as a matter of law and, therefore, the State was required to present non-accomplice testimony to corroborate his testimony.[4] An intermediate court of appeals rejected that argument after summarizing the evidence presented at trial, as follows:

> In 1993, Fortino Delangel was working at a used car dealership from which appellant had purchased two vehicles. After the second purchase, appellant asked Delangel if he knew anyone who sold marijuana. Delangel contacted his brother-in-law, Jose Guerrero, and asked if he knew anyone who sold marijuana. In turn, Guerrero contacted Salvador Vargas. With Delangel and Guerrero acting as middlemen, appellant and Vargas agreed that appellant would purchase approximately thirty pounds of marijuana from Vargas. Delangel understood that appellant would compensate him for his participation, although the precise amount of that compensation was not clear.

---

[1]Indictment, Docket Entry No. 11-5, p. 26. For purposes of identification, all page numbers refer to the pagination imprinted by the court's electronic filing system, CM/ECF.

[2]Verdict, Docket Entry No. 11-5, p. 276.

[3]Judgment of Conviction by Jury, Docket Entry No. 11-5, p. 289.

[4]Appellant['s] Brief, Docket Entry No. 11-12, p. 4.

Delangel, Guerrero, appellant, and an unidentified companion of appellant, drove in two cars to Room 28 at the Lafronda Motel in South Houston to meet with Vargas. Delangel and appellant rode in separate cars. Delangel testified that he had never met Vargas before that evening.

Vargas initially stated that only one individual could come into the room; he relented when appellant insisted that all four men be allowed to enter. Appellant's unidentified companion stood near the door inside the room and Delangel stood off to the side of the room with Guerrero while Vargas and appellant conducted the drug transaction.

Appellant asked Vargas about the marijuana, and Vargas replied, "[W]here is the money[?]" Appellant "opened his jacket" and said "[h]ere's the money." Delangel did not see what was in appellant's jacket, but assumed it was payment for the marijuana. Vargas removed a "suitcase" from under the bed and handed appellant a package of marijuana from the bag.

Appellant tore each package open with his teeth, smelled the marijuana, and told Vargas, "[T]his is the money." However, rather than give Vargas the money, appellant pulled out a gun and shot him in the chest. Vargas fell forward onto the floor of the room and died shortly thereafter. Appellant's companion also drew a gun, which he pointed at [Delangel] and Guerrero. Appellant then grabbed the bag with the packages of marijuana and backed out of the motel room with his companion; both aimed their guns at Delangel and Guerrero. Before Delangel and Guerrero left the motel room, Roel Salinas, a coworker of Vargas, ran out of the bathroom holding a knife and frantically asked Delangel and Guerrero what had happened. Delangel called 911 from a payphone at the motel, and left with Guerrero because they were afraid appellant would find them and kill them.

Delangel and Guerrero soon fled to Mexico, but both voluntarily returned to Houston at the request of the police to give information about the murder. Shortly after the murder, Delangel positively identified appellant as the shooter. Officers executed an arrest warrant at appellant's house. After arresting appellant, police searched his house and recovered five full metal jacket nine millimeter bullets; four of the bullets found there were same brand as the casing discovered at the

-3-

crime scene, which also came from a full metal jacket nine millimeter bullet. They also found two large empty black duffel bags, which they suspected were "part of the original drug room." A ballistics expert testified that the unfired cartridges found in appellant's house did not have sufficient individual characteristics to make an affirmative association with the fired casing found in the motel.

Appellant forfeited his bond and did not appear for trial in 1995. For the next 15 years, appellant traveled back and forth from New York to Jamaica using the alias Peter Richards. Appellant escaped detection due to an over-sight in recording his fingerprints with the Texas Department of Public Safety and the Federal Bureau of Investigation. After resolution of the oversight, officers linked Peter Richards's photograph, finger-prints, and Jamaican passport to appellant's information and true identity, and apprehended appellant in New York in September 2010.

Guerrero testified, but denied any knowledge of appellant or the drug transaction.

Appellant did not ask the trial court to instruct the jury on the law concerning accomplice-witness testimony, and did not object to the trial court's failure to give such instructions *sua sponte*. The jury found appellant guilty of murder and sentenced him to 30 years' confinement.

Pearson v. State, No. 14-13-00305-CR, 2014 WL 1030774, at *1-2

(Tex. App. — Houston [14th Dist.] March 18, 2014). The Texas Court

of Criminal Appeals refused Pearson's petition for discretionary

review.

Pearson challenged his conviction by filing an Application for

a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction

Under [Texas] Code of Criminal Procedure, Article 11.07

("Application") with the trial court.[5] Pearson claimed that he was

_____

[5]Application, Docket Entry No. 11-39, pp. 5-22.

actually innocent and that he was denied effective assistance of counsel and the opportunity to investigate evidence due to prosecutorial misconduct.[6] The state habeas corpus court, which also presided over Pearson's trial, entered findings of fact and concluded that Pearson was not entitled to relief on any of his claims.[7] The Texas Court of Criminal Appeals agreed and denied relief without a written order on findings made by the trial court without a hearing.[8]

Pearson now contends that he is entitled to federal habeas relief from his conviction under 28 U.S.C. § 2254(d) for the following reasons:

1.  He was denied effective assistance of counsel at trial because his attorney failed to (a) request an accomplice-witness jury instruction; (b) file a motion to suppress evidence alleging that his illegal status as a Jamaican citizen nullified his consent to search; (c) allow him to exercise his right to testify; and (d) investigate DNA evidence.

2.  His trial and appellate counsel were ineffective and he was denied the right to counsel during a critical stage because his trial counsel failed to file a motion for new trial.

3.  He was denied due process and the right to a fair trial when the State denied him the opportunity to investigate fingerprint and DNA evidence.

_____

[6]Id. at 10-19.

[7]State's Proposed Findings of Fact, Conclusions of Law, and Order Following Remand ("Findings of Fact and Conclusions of Law"), Docket Entry No. 11-38, pp. 15-22.

[8]Action Taken on Writ No. 83,029-04, Docket Entry No. 11-31, p. 1.

4.    He is actually innocent.[9]

The respondent argues that federal review is unavailable for Claim 1(b), which was not properly raised in state court and is barred by the doctrine of procedural default.[10]  The respondent also argues that Pearson is not entitled to relief on any of his other claims, which were rejected previously in state court.[11]

## II.  **Standard of Review**

A habeas corpus petition filed by a state prisoner may not be granted in federal court unless the petitioner has first "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  Thus, a federal habeas corpus petitioner "must exhaust all available state remedies before he may obtain federal habeas relief." Sones v. Hargett, 61 F.3d 410, 414 (5th Cir. 1995).

To the extent that the petitioner's claims were adjudicated on the merits in state court, his claims are subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d).  Under the AEDPA a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

───────────────

[9]Petition, Docket Entry No. 1, pp. 7-10.  The court has re-numbered the claims for purposes of analysis.

[10]Respondent's Answer, Docket Entry No. 10, pp. 6-10.

[11]Id. at 12-35.

-6-

Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Likewise, if a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." Matamoros v. Stephens, 783 F.3d 212, 215 (5th Cir. 2015) (citations omitted and internal quotation marks omitted). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

The AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' . . . [which] 'demands that state-court decisions be given the benefit of the doubt.'" <u>Renico v. Lett,</u> 130 S. Ct. 1855, 1862 (2010) (citations omitted). This standard is intentionally "difficult to meet" because it was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." <u>Richter,</u> 131 S. Ct. at 786 (quoting <u>Jackson v. Virginia,</u> 99 S. Ct. 2781, 2796, n.5 (1979) (Stevens, J., concurring)).

A state court's factual determinations are also entitled to "substantial deference" on federal habeas corpus review. <u>Brumfield v. Cain,</u> 135 S. Ct. 2269, 2277 (2015); <u>Wood v. Allen,</u> 130 S. Ct. 841, 849 (2010) (noting that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"). A state court's findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The presumption of correctness extends not only to express factual findings, but also to implicit or "'unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" <u>Murphy v. Davis,</u> 901 F.3d 578, 597 (5th Cir. 2018) (quoting <u>Valdez v. Cockrell,</u> 274 F.3d 941, 948 n.11 (5th Cir. 2001)).

III. **Discussion**

A. **Procedural Default (Claim 1(b))**

In Claim 1(b) Pearson contends that his trial attorney was constitutionally ineffective because he did not file a motion to suppress evidence seized by police during the search of his residence. Pearson argues that he was not legally in the United States or on the lease, therefore, he was unable to consent to the search.[12] The respondent argues that federal review is unavailable because Pearson did not raise this claim in state court for the purpose of exhausting state court remedies as required by 28 U.S.C. § 2254(b) before seeking federal review.[13] The respondent argues, therefore, that this claim is unexhausted and barred from federal review by the doctrine of procedural default.[14]

The exhaustion requirement found in § 2254(b) "is satisfied when the substance of the federal claim is 'fairly presented' to the highest state court on direct appeal or in state post-conviction proceedings[.]" Johnson v. Cain, 712 F.3d 227, 231 (5th Cir. 2013). To satisfy the exhaustion requirement a prisoner must "present the state courts with the same claim he urges upon the federal courts." Picard v. Connor, 92 S. Ct. 509, 512 (1971) (citations omitted). "The exhaustion requirement is not satisfied

---

[12]Petition, Docket Entry No. 1, p. 7.

[13]Respondent's Answer, Docket Entry No. 10, pp. 6-10.

[14]Id.

. . . where the petitioner presents new legal theories or factual claims in his federal habeas petition." <u>Neville v. Dretke,</u> 423 F.3d 474, 478 (5th Cir. 2005) (citations omitted).

The record reflects that defense counsel filed a motion to suppress evidence seized from Pearson's residence on the grounds that the signature on the consent-to-search form supposedly executed by Pearson was forged.[15] Pearson testified to that effect during a hearing outside the jury's presence.[16] Pearson raised an ineffective-assistance claim in his state habeas application, which argued that his defense counsel was deficient for not also arguing that Pearson was handcuffed and therefore unable to sign the consent form before the search of his home.[17] Pearson did not make any mention of his attorney's failure to argue that Pearson could not consent to a search because of his nationality, immigration status, or any other reason that Pearson now asserts on federal habeas review.[18] Because the facts in Pearson's state habeas application are different from the ones he presents in his federal Petition, he did not fairly present the substance of Claim 1(b) in state court and failed to exhaust available state remedies as a

---

[15]Court Reporter's Record, vol. 3, Docket Entry No. 11-8, pp. 119-125.

[16]<u>Id.</u>

[17]Application, Docket Entry No. 11-39, p. 10.

[18]<u>See id.</u>

result.  See Wilder v. Cockrell, 274 F.3d 255, 259-60 (5th Cir. 2001).

Pearson cannot now return to state court and raise his unexhausted claim because of the Texas procedural rule that prohibits successive writs unless the petitioner establishes exceptional circumstances, which are not present here.  See Tex. Code Crim. Proc. art. 11.07, § 4(a).  Pearson's failure to exhaust state court remedies when he had the chance to do so constitutes a procedural default that is adequate to bar federal review.  See Neville, 423 F.3d at 480 (concluding that unexhausted claims, which could no longer be raised in state court due to Texas's prohibition on successive writs, were procedurally defaulted); see also Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (same) (citing Fearance v. Scott, 56 F.3d 633, 642 (5th Cir. 1995)).

Federal habeas corpus review of a defaulted claim is available only if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 111 S. Ct. 2546, 2565 (1991).  To satisfy the exception, which is reserved for fundamental miscarriages of justice, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 106 S. Ct. 2616, 2627 (1986).  For reasons discussed below, Pearson

makes no showing of factual innocence in this case, and he does not otherwise attempt to explain or demonstrate cause for his default. Accordingly, Claim 1(b) is procedurally barred from federal review.

**B.    Ineffective Assistance of Counsel (Claims 1(a), 1(c), 1(d), 2)**

Pearson contends that he was denied effective assistance of counsel in connection with his trial and post-trial proceedings.[19] Claims for ineffective assistance of counsel are governed by the standard announced in Strickland v. Washington, 104 S. Ct. 2052 (1984). To prevail under the Strickland standard a defendant must demonstrate (1) that his counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. Id. at 2064. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

"To satisfy the deficient performance prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" Garcia v. Stephens, 793 F.3d 513, 523 (5th Cir. 2015) (quoting Strickland, 104 S. Ct. at 2064). "This is a 'highly deferential' inquiry, attended by 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 104 S. Ct. at 2065). "It is only when the lawyer's errors were so

---

[19]Petition, Docket Entry No. 1, pp. 7-8, 10.

serious that counsel was not functioning as the 'counsel'
guaranteed . . . by the Sixth Amendment that <u>Strickland's</u> first
prong is satisfied." <u>Buck v. Davis,</u> 137 S. Ct. 759, 775 (2017)
(citation and internal quotation marks omitted).

To satisfy the prejudice prong, "the defendant must show that
there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been
different." <u>Strickland,</u> 104 S. Ct. at 2068. A habeas petitioner
must "affirmatively prove prejudice." <u>Id.</u> at 2067. A petitioner
cannot satisfy the second prong of <u>Strickland</u> with mere speculation
and conjecture. <u>See Bradford v. Whitley,</u> 953 F.2d 1008, 1012 (5th
Cir. 1992). Conclusory allegations are insufficient to demonstrate
either deficient performance or actual prejudice. <u>See Day v.
Quarterman,</u> 566 F.3d 527, 540-41 (5th Cir. 2009).

1. <u>Failure to Request a Jury Instruction (Claim 1(a))</u>

Pearson's primary claim is that his trial attorney (Peter
Justin) was deficient for failing to request an accomplice-witness
jury instruction because Fortino Delangel was an accomplice as a
matter of law.[20] Justin explained that he did not request such an
instruction because he did not believe it was warranted by the
evidence.[21] Justin qualified, however, that in hindsight he "should

---

[20]Petition, Docket Entry No. 1, pp. 7, 19-21.

[21]Affidavit from Peter Justin ("Justin Affidavit"), Docket
Entry No. 11-38, p. 9.

have" requested such an instruction "in an abundance of caution" and asked the trial court to rule on the issue.[22] The state habeas corpus court noted that the court of appeals had already found that an accomplice-witness jury instruction was not required because the evidence did not show that Delangel was an accomplice as a matter of law.[23] The state habeas corpus court concluded, therefore, that Justin was not deficient for failing to request the instruction and Pearson was not harmed as a result under the legal standard found in Strickland.[24]

The record confirms that the intermediate court of appeals considered whether an accomplice-witness jury instruction was warranted in Pearson's case and concluded that it was not because Delangel did not qualify as an accomplice as a matter of law. See Pearson v. State, No. 14-13-00305-CR, 2014 WL 1030774, at *2-5 (Tex. App. — Houston [14th Dist.] March 18, 2014, pet. ref'd). This conclusion rested on the appellate court's interpretation of Texas law, which defines an accomplice as "any person who, with the requisite culpable mental state, participated with the accused before, during, or after the crime by performing some affirmative act that promoted its commission." Id. at *2 (citing Druery v. State, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007)). In Texas a

---

[22]Id.

[23]Findings of Fact and Conclusions of Law, Docket Entry No. 11-38, pp. 16-17.

[24]Id. at 17, 20.

-14-

person is considered an "accomplice as a matter of law," such that an accomplice-witness instruction is required by Article 38.14 of the Texas Code of Criminal Procedure, only if "he could be prosecuted for the same offense as the defendant or for a lesser included offense." Id. at *3 (citing Blake v. State, 971 S.W.2d 451, 454-55 (Tex. Crim. App. 1998)).

Because the appellate court's decision is based on state law, its conclusion that Delangel did not qualify as an accomplice is entitled to considerable deference on federal habeas review. See Arnold v. Cockrell, 306 F.3d 277, 279 (5th Cir. 2002) ("We will take the word of the highest court on criminal matters of Texas as to the interpretation of its law, and we do not sit to review that state's interpretation of its own law.") (quoting Seaton v. Procunier, 750 F.2d 366, 368 (5th Cir 1985)). Pearson makes no effort to refute the state appellate court's findings of fact, which are entitled to the presumption of correctness on federal habeas corpus review in the absence of clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sumner v. Mata, 102 S. Ct. 1303, 1304 (1982) (per curiam) (observing that "the presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact"); Moody v. Quarterman, 476 F.3d 260, 268 (5th Cir. 2007) (same) (citations omitted).

The state habeas corpus court's determination that Justin was not ineffective for failing to request an accomplice-witness jury

instruction is also entitled to substantial deference on federal habeas review. Where an ineffective-assistance claim was rejected by the state court, the Supreme Court has clarified that the issue on federal habeas review is not whether "'the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" <u>Knowles v. Mirzayance,</u> 129 S. Ct. 1411, 1420 (2009) (citation omitted). When applied in tandem with the highly deferential standard found in 28 U.S.C. § 2254(d), review of ineffective-assistance claims is "doubly deferential" on habeas corpus review. <u>Id.</u> at 1413; <u>see also Richter,</u> 131 S. Ct. at 788 (emphasizing that the standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted); <u>Beatty v. Stephens,</u> 759 F.3d 455, 463 (5th Cir. 2014) (same).

Pearson does not point to evidence in the record demonstrating that Delangel was an accomplice to the charged offense or that the trial court would have granted a request for an accomplice-witness instruction if such a request had been made. Thus, Pearson does not demonstrate that defense counsel was deficient for not requesting an accomplice-witness jury instruction or that the result of his trial would have been different if he had. Based on this record, Pearson has not demonstrated that the state habeas corpus court's conclusion was unreasonable. Accordingly, Pearson

fails to show that he is entitled to relief on this claim under 28 U.S.C. § 2254(d).

2.  Pearson's Right to Testify (Claim 1(c))

Pearson contends that Justin was deficient because he refused to allow him to exercise his right to testify.[25] The state habeas corpus court rejected this claim, finding that it was "not supported by the trial record."[26]

In his affidavit to the state habeas corpus court Justin acknowledged that he advised Pearson not to testify under the circumstances of the case, but informed Pearson that he "could overrule [his] advice [and testify] if he so desired."[27] Justin further ensured that Pearson was advised of his right to testify on the record at trial.[28] The record confirms that Justin told Pearson in open court, outside the jury's presence, that even though he had advised him not to testify Pearson had "an absolute right" to disregard his advice and testify if he so desired.[29] The trial court also advised Pearson on the record that he had "a right to

_____

[25]Petition, Docket Entry No. 1, pp. 8, 24-25.

[26]Findings of Fact and Conclusions of Law, Docket Entry No. 11-38, p. 18.

[27]Justin Affidavit, Docket Entry No. 11-38, p. 11.

[28]Id.

[29]Court Reporter's Record, vol. 4, Docket Entry No. 11-9, p. 152.

get up here and tell [his] side of the story[.]"[30]   Pearson

responded that he would follow his lawyer's advice and elected to

not testify.[31]

     "A criminal defendant has a fundamental constitutional right

to testify on his own behalf."  <u>Jordan v. Hargett,</u> 34 F.3d 310, 312

(5th Cir. 1994) (citing <u>Rock v. Arkansas,</u> 107 S. Ct. 2704, 2708-10

(1987)).  "This right is granted to the defendant personally and

not to his counsel."  <u>See id.</u> (citing <u>Rock,</u> 107 S. Ct. at 2709).

The Fifth Circuit has recognized that a defendant may waive his

right to testify, and that defendants frequently do so on the

advice of counsel.  <u>See id.</u>  There is no violation of the right to

testify where the defendant agreed during trial with his attorney's

recommendation that he not testify, even if the defendant decides

later, in hindsight, that he should have testified.  <u>See id.</u>

     The record confirms that Pearson elected to follow his

counsel's advice and not testify on his own behalf.[32]  To the extent

that Pearson chose not to testify based on his counsel's advice, he

cannot show that he was denied his constitutional right to testify.

<u>See Jordan,</u> 34 F.3d at 312.  Pearson, who absconded while on bond

and avoided apprehension for 15 years before being brought to

trial, does not otherwise show that defense counsel's advice was

---

[30]<u>Id.</u>

[31]<u>Id.</u>

[32]<u>Id.</u>

-18-

deficient or that the state habeas corpus court unreasonably denied this claim. Accordingly, Pearson is not entitled to relief on this claim under 28 U.S.C. § 2254(d).

### 3. Failure to Investigate DNA Evidence (Claim 1(d))

Pearson contends that his trial attorney was deficient for failing to investigate "possible DNA evidence" from the scene of the offense.[33] In response to his claim, Justin acknowledged that a cigarette with a drop of blood on it was recovered from the scene of the offense, which occurred in 1994.[34] Justin did not ask the State to test the cigarette to see if Pearson was excluded as the source of the blood because he believed that the blood likely came from the victim.[35] The state habeas corpus court found that Justin was not deficient for failing to have the cigarette or the blood tested and that Pearson did not establish prejudice as a result because Pearson failed to show that DNA testing "would have benefitted his case."[36]

A defendant who alleges a failure to investigate on the part of his counsel "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of

---

[33]Petition, Docket Entry No. 1, pp. 8, 25-26.

[34]Justin Affidavit, Docket Entry No. 11-38, pp. 9, 10.

[35]Id. at 11.

[36]Findings of Fact and Conclusions of Law, Docket Entry No. 11-38, p. 19.

-19-

the trial." <u>United States v. Bernard,</u> 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted) (emphasis added). Pearson does not allege facts showing that DNA testing would have yielded evidence favorable to the defense and that the outcome of his trial would have been different if testing had been done. Pearson's conclusory allegations are insufficient to demonstrate deficient performance or actual prejudice. <u>See Day,</u> 566 F.3d at 540-41; <u>see also Lincecum v. Collins,</u> 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence). Because Pearson has not shown that he was denied effective assistance of counsel, he is not entitled to relief on this claim.

4.   <u>Failure to File a Motion for New Trial (Claim 2)</u>

Pearson contends that he was denied effective assistance of counsel post-trial because neither his trial counsel nor his appellate attorney filed a motion for new trial on his behalf.[37] As a result, Pearson claims that he was denied the right to counsel during this "critical stage" of his proceeding.[38] The state habeas corpus court rejected this claim because Pearson failed to allege

_____

[37]Petition, Docket Entry No. 1, pp. 10, 28-29.

[38]<u>Id.</u>

-20-

what his counsel "did or did not do that amounted to ineffective assistance."[39]

In Texas, a defendant has thirty days to file a motion for new trial from the date his sentence is imposed in open court. See Tex. R. App. P. 21(a); Cooks v. State, 240 S.W.3d 906, 907-08 (Tex. Crim. App. 2007). Following precedent from other circuit courts and the Texas Court of Criminal Appeals, the Fifth Circuit has held that "there is a Sixth Amendment right to the assistance of counsel at the motion for new trial during the post-trial, pre-appeal period, in Texas, because it is a critical stage." McAfee v. Thaler, 630 F.3d 383, 393 (5th Cir. 2011); see also Cooks, 240 S.W.3d at 911. A defendant's claim that he was denied effective assistance of counsel in connection with a motion for new trial is governed by the two-pronged Strickland test, which requires the defendant to demonstrate both deficient performance and prejudice by showing that, but for counsel's errors, the result of the proceeding would have been different. McAfee, 630 F.3d at 394.

The record reflects that Pearson was not without counsel during the post-trial, pre-appeal time for filing a motion for new trial. The record reflects that Pearson's sentence was imposed on March 27, 2013.[40] That same day, Justin filed a notice of appeal

---

[39]Findings of Fact and Conclusions of Law, Docket Entry No. 11-38, p. 20.

[40]Judgment of Conviction by Jury, Docket Entry No. 11-5, p. 289.

-21-

on Pearson's behalf and moved to withdraw as counsel of record.[41] The trial court granted Justin's motion to withdraw and appointed another attorney (Tony Aninao) to represent Pearson for purposes of the appeal.[42] On April 24, 2013, shortly before Pearson's time to file a motion for new trial expired, Aninao filed a motion for leave to withdraw and asked for other appellate counsel to be appointed in his place.[43] The trial court promptly granted Aninao's motion and appointed Bob Wicoff of the Harris County Public Defender's Office to represent Pearson the following day, on April 25, 2013.[44] Thereafter, on May 7, 203, Assistant Public Defender Melissa Martin filed a notice of substitution as the new appellate attorney of record in place of Wicoff.[45]

Although no motion for new trial was filed on his behalf, Pearson does not propose any claim that would have been successful had one been filed. Absent a showing that Pearson's attorney failed to raise a meritorious claim, he fails to demonstrate deficient performance or actual prejudice. See McAfee, 630 F.3d at

---

[41]Notice of Appeal, Docket Entry No. 11-5, p. 293.

[42]Pauper's Oath on Appeal and Order, Docket Entry No. 11-5, p. 295.

[43]Motion for Leave to Withdraw as Appellate Counsel, Docket Entry No. 11-5, p. 297.

[44]Order, Docket Entry No. 11-5, p. 298; Pauper's Oath on Appeal and Order, Docket Entry No. 11-5, p. 299.

[45]Notice of Substitution of Attorney, Docket Entry No. 11-5, p. 302.

397; see also Lavernia v. Lynaugh, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions."). Pearson fails to show that the state habeas corpus court unreasonably denied this claim. Accordingly, he is not entitled to relief under 28 U.S.C. § 2254(d).

## C. Pearson Was Not Denied Due Process (Claim 3)

Pearson alleges that he was denied due process and the right to a fair trial because he was not afforded the opportunity to investigate fingerprint and DNA evidence collected at the scene.[46] The state habeas corpus court denied this claim, noting that the district attorney's office had an "open file policy" during the pendency of his case and that defense counsel was not prevented from inspecting any of the evidence.[47] The state habeas corpus court pointed to the affidavit from Justin, who acknowledged that he was not prevented from reviewing the State's file, which was "open" to him.[48]

Pearson contends that the State should have done DNA testing on the blood evidence recovered from the cigarette, which could

---

[46]Petition, Docket Entry No. 1, pp. 8, 25-26.

[47]Findings of Fact and Conclusions of Law, Docket Entry No. 11-38, p. 19.

[48]Justin Affidavit, Docket Entry No. 11-38, p. 11.

have excluded him as a suspect, and that fingerprints collected at the scene of the offense "would have brought forth additional parties that were present at the scene of the offense."[49]  Pearson does not show, however, that the State prevented him from testing this evidence.  To the extent that Pearson attempts to blame his defense counsel for not asking the State to test evidence collected at the scene, he has not alleged specific facts showing what the test results would have established or how it would have changed the outcome of his trial.  See Bernard, 762 F.3d at 472.  Pearson does not otherwise show that he has a valid claim for relief stemming from the failure to test forensic evidence.  As the Fifth Circuit has repeatedly held, "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding."  Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983) (citing Schlang v. Heard, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases)).  Accordingly, Pearson fails to show that the state habeas corpus court unreasonably denied this claim or that he is entitled to relief under 28 U.S.C. § 2254(d).

D.   **Actual Innocence (Claim 4)**

Finally, Pearson contends that he is entitled to relief because "new evidence shows he is actually innocent."[50]  Noting that

---

[49]Petition, Docket Entry No. 1, pp. 25-26.

[50]Petition, Docket Entry No. 1, p. 9.

Pearson presented no more than conclusory allegations, which are insufficient to warrant habeas relief, the state habeas corpus court rejected this claim because Pearson failed to identify "any newly discovered evidence that shows he is actually innocent."[51]

Although Texas recognizes such a claim,[52] it is well established that a petitioner's claim of actual innocence, standing alone, is not an actionable ground for relief on federal habeas corpus review. See Herrera v. Collins, 113 S. Ct. 853, 860 (1993) ("Claims of actual innocence . . . have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). Instead, a claim of actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits." Id. at 862. A petitioner must support his allegation of actual innocence with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Schlup v. Delo, 115 S. Ct. 851, 865 (1995). The petitioner must then show that "it is more likely than not that no reasonable juror

---

[51]Findings of Fact and Conclusions of Law, Docket Entry No. 11-38, p. 20.

[52]See, e.g., Ex parte Brown, 205 S.W.3d 538, 544-46 (Tex. Crim. App. 2006) (discussing claims of actual innocence based upon newly discovered evidence, which are cognizable in post-conviction writs of habeas corpus).

would have convicted him in light of the new evidence." Id. at 867.

Pearson, who provides no new evidence in support of his claim, falls far short of the showing demanded by Schlup. Instead, Pearson points to his trial attorney's deficient performance and what he characterizes as discrepancies in the testimony given by witnesses who were present when the offense took place (Delangel, who identified Pearson as the murderer, and Guerrero, who did not).[53] The jury considered all of the testimony and voted to convict. To the extent that Pearson asks this court to re-weigh the testimony, a federal habeas corpus court may not substitute its view of the evidence for that of the fact-finder. See Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995). Because Pearson does not present any new evidence in support of his claim, he does not demonstrate that he has a credible claim of actual innocence in this case or that the state habeas corpus court unreasonably denied relief. Absent a valid claim for relief, Pearson does not show that he is entitled to a federal writ of habeas corpus under 28 U.S.C. § 2254(d), and his Petition must be dismissed.

_____

[53]Petition, Docket Entry No. 1, pp. 27-28. Pearson contends that Guerrero described the murderer as 5'5" in height and testified that the person who shot the victim was not in the courtroom. See id. at 27. The court has reviewed the testimony given by Delangel and Guerrero and the discrepancy asserted by Pearson is not substantiated by the record, which reflects that Guerrero made none of the statements attributed to him by Pearson. See Court Reporter's Record, vol. 3, Docket Entry No. 11-8, pp. 45-53 (Guerrero's testimony).

## IV. **Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck v. Davis, 137 S. Ct. 759, 773 (2017) (citation and internal quotation marks omitted).

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not demonstrate that his claims could be resolved

-27-

in a different manner, a certificate of appealability will not issue in this case.

## V. <u>Conclusion and Order</u>

The court **ORDERS** as follows:

1.  Lynval Maclasa Pearson's Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

2.  A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 30th day of September, 2019.

 

 

 

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE